**EXHIBIT 2**



TRUSTEES FOR MICHIGAN BAC HEALTH CARE FUND, et al., Plaintiffs, v. C.S.S. CONTRACTING COMPANY, INC., and F. MICHAEL SPENCER, Defendants.

Case No. 07-12331

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

*2008 U.S. Dist. LEXIS 32758*

April 22, 2008, Decided
April 22, 2008, Filed

**SUBSEQUENT HISTORY:** Reconsideration granted by, in part, Reconsideration denied by, in part *Trs. for Mich. Bac Health Care Fund v. C.S.S. Contr. Co., 2008 U.S. Dist. LEXIS 41821 ( E.D. Mich., May 29, 2008)*

**PRIOR HISTORY:** *Trs. for Mich. BAC Health Care Fund v. C.S.S. Contr. Co., 2008 U.S. Dist. LEXIS 19332 ( E.D. Mich., Mar. 13, 2008)*

**COUNSEL:** [*1] For Michigan BAC Health Care Fund, Michigan BAC Pension Fund, Michigan BAC Apprenticeship and Educational Fund, Bricklayers and Trowel Trades International Pension Fund, Bricklayers and Allied Craftworkers Local 9 Michigan, Michigan Council of Employers of Bricklayers and Allied Craftworkers, Plaintiffs: Dawn M. Weier, Steven F. Spender, LEAD ATTORNEYS, Spender, Robb, Flint, MI.

For C. S. S. Contracting Company, Incorporated, F. Michael Spencer, Defendants, Counter Claimants: L. David Laswon, Winegarden, Haley, Grand Blanc, MI.

For Bricklayers and Allied Craftworkers Local 9 Michigan, Counter Defendant: Dawn M. Weier, Steven F. Spender, LEAD ATTORNEYS, Spender, Robb, Flint, MI.

**JUDGES:** Hon. Sean F. Cox, United States District Judge.

**OPINION BY:** Sean F. Cox

**OPINION**

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Summary Judgment. Both parties have briefed the issues, including supplemental briefing, and a hearing was held March 13, 2008. For the following reasons, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment as to liability on Plaintiff MCE and Local 9's claim for breach of the CBA and Trust Agreements; and the Trust Fund Plaintiff's claim of personal liability for unpaid employee [*2] contributions falling within the scope of *29 C.F.R. § 2510.3-102*. The Court also **GRANTS** Plaintiffs' Motion for Summary Judgment on Defendants' Counterclaim against Local 9 for fraudulent inducement. The Court **DENIES** Plaintiffs' Motion for Summary Judgment on Plaintiff's claim of personal liability for unpaid employer contributions. The only remaining issue in this case

is damages, in light of Plaintiffs' failure to submit an accurate audit.

## I. BACKGROUND

This action arises out of unpaid fringe benefit contributions. Plaintiffs are primarily a group of fringe benefit trust funds ("Trust Fund Plaintiffs"). Plaintiffs claim that Defendant CSS Contracting ("CSS"), through Defendant F. Michael Spencer, agreed to be bound by a collective bargaining agreement ("CBA"). The CBA was entered into between the Michigan Council of Employers of Bricklayers & Allied Craftworkers ("MCE") and the Bricklayers & Allied Craftworkers Union Local 9 of Michigan ("Local 9"). The CBA obligated CSS to make fringe benefit contribution payments to the Trust Fund Plaintiffs. MCE and Local 9 are also Plaintiffs in this action.

An audit was conducted for the period of June 2005 through November 2006 by Jeni Magwood. [*3] The audit claims that Plaintiffs are owed a total of $ 46,749.36. The audit includes unpaid fringe benefit contributions and unpaid dues. It also contains an "audit assessment," which is a liquidated damage pursuant to the CBA.

Defendants dispute the accuracy of the audit. The parties agree that six jobs were excluded from the CBA agreement, meaning that Defendants did not have to pay fringe benefit contributions for those six jobs. Defendants argue that those jobs were included in the audit calculation. Further, Defendants assert that they were fraudulently induced to sign the CBA at issue by the oral representation of Local 9 Field Representative Michael Lynch, who allegedly stated that Defendant Spencer would not be required to pay fringe benefit contributions for himself. Defendants contend that the audit wrongly includes unpaid fringe benefit contributions for work performed by Defendant Spencer. Defendants further contend that the audit includes unpaid benefit contributions for an employee, Jon Fritz, who was not performing work covered by the CBA.

On May 30, 2007, Plaintiffs filed a Complaint alleging: (1) violation of the Employee Retirement Income Security Act ("ERISA"); (2) [*4] breach of the CBA and trust agreements; and (3) seeking personal liability against Defendant Spencer. On January 7, 2008, Plaintiffs filed a Motion for Summary Judgment seeking judgment in the amount of $ 46,749.36, plus $ 7,308.80 in costs and attorney fees; and $ 2,978.40 in pre-judgment interest. Defendants responded to Plaintiffs' Motion, but incorrectly determined that the Motion pertained only to Plaintiffs' ERISA claim. A hearing was held on March 13, 2008. At the hearing, Plaintiffs clarified that the Motion pertained to all three of their claims.

Following the hearing, the Court entered an Order granting Plaintiffs' Motion for summary judgment against CSS on Plaintiffs' ERISA claim, only as to liability and only with respect to the Trust Fund Plaintiffs. [Doc. 22]. The Court also permitted the parties to file supplemental briefing to allow Defendants to address Plaintiffs' remaining claims. The parties filed timely supplemental briefing.

## III. STANDARD OF REVIEW

Under *Fed. R. Civ. P 56(c)*, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue [*5] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis, 57 F.3d 476, 478 (6th Cir. 1995)*. A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)*. The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 150 (6th Cir. 1995)*.

## IV. ANALYSIS

### A. Equitable Defenses

### 1. Equitable Estoppel

Defendants argue that they should only be required to pay the principal amount of unpaid contributions owed through July 31, 2006. Defendants

rely on the agreement between MCE and Local 9 which states that "[t]he Employer agrees to file monthly reports...along with payment of the above fringe benefit contribution to the depository, Administrator of the Union [*6] in the time and manner prescribed by the Trustees." [Defendants' Exhibit 3, p.4, Art.VIII, § 2]. The agreement also provides that Michigan BAC Health Care contributions be deposited each month to a depository designated by the trustees. *Id.* at § 9. It is undisputed that Defendants were not provided the contribution report forms until after November 2006. Thus, Defendants conclude that while they are liable for the contractually agreed upon unpaid fringe benefit contributions, they should not be liable for interest or any other amounts claimed due because Plaintiffs failed to provide the proper forms or directions for making contributions.

The elements of equitable estoppel are: (1) conduct or language amounting to a representation of material fact; (2) awareness of the true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting estoppel such that the latter has a right to believe that the former's conduct is so intended; (4) unawareness of the true facts by the party asserting the estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the [*7] representation. *Trustees of the Michigan Laborer's Health Care Fund, et al. v. Gibbons, 209 F.3d 587, 591 (6th Cir. 2000)*. The representation relied on to establish estoppel must contain "an element of fraud, either intended deception or 'such gross negligence as to amount to constructive fraud.'" *Id.* (citation omitted). Further, fraudulent conduct alone is not enough, there must be reasonable reliance on the actions of the party to be estopped. *Id.*

In this case, Defendants' assertion of equitable estoppel based on Plaintiffs' failure to timely provide reporting documents and instructions is without merit. Defendants were not unaware that they were required to make the fringe benefit contributions, and were aware, by virtue of the CBA, of the penalties for failing to do so. Additionally, relying on the failure of Plaintiffs to provide proper documentation and instruction as an excuse for failing to make the fringe benefit payments is not reasonable. Defendants do not allege that they made any attempts, in light of their obligation to make such payments, to ascertain the necessary information. It does not appear that Defendants requested this information from Plaintiffs and were denied [*8] it. It does not appear that Defendants submitted the information even though they did not have the proper form. There is also no indication that Defendants put the money owed into an escrow account until proper instructions were given. Finally, there is no indication of any fraud on the part of Plaintiffs in failing to give Defendants the proper forms. Accordingly, Defendants cannot assert equitable estoppel to bar Plaintiffs' claim for interest or attorney fees on the unpaid fringe benefit contributions.

## 2. Laches

Laches is "a negligent and unintentional failure to protect one's rights." *Chirco v. Crosswinds Communities, Inc., 474 F.3d 227, 231 (6th Cir. 2007)*(citation omitted). "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Id.* Laches does not result from mere lapse of time, rather "[b]y his negligent delay, the plaintiff may have misled the defendant or others into acting on the assumption that the plaintiff has abandoned his claim, or that he acquiesces in the situation..." *Id.* Lastly, there is a strong presumption that where the statute of limitations has not elapsed, the equitable [*9] doctrine of laches should not bar the claim. *Id. at 233*.

Laches is not applicable in the manner Defendants seek to use it. Laches acts as a sort of equitable statute of limitations, to bar a plaintiff from bringing a claim. Here, Defendants do not seek to bar Plaintiffs from bringing a claim for unpaid fringe benefit contributions. Instead, Defendants seek a ruling that because of Plaintiffs' "failure to provide contribution forms, and directions as to payments, and their failure to pursue their claims in a timely manner" Defendants were prejudiced by the "imposition of costs claimed due" and the "inability to terminate any obligations under the second CBA when the first one terminated." [Response, p.17]. Laches is not available to limit recovery to that which Defendants believe is equitably allowed, it is only available where there is a lack of diligence in the plaintiff bringing a claim altogether. That is not the case here. Moreover, the

Plaintiffs' claim was timely under the statutory limitation period and there is a strong presumption in favor of denying laches in that circumstance. *Chirco, 474 F.3d at 233.*

### 3. Waiver

Defendants also contend that Local 9 waived any claims arising [*10] from an obligation to pay benefits on behalf of Defendant Spencer based on Lynch's statement that Defendant Spencer's wages were not covered under the CBA.

Defendants' argument is without merit. Under Michigan law, waiver is "the intentional relinquishment of a known right." *Fitzgerald v. Hubert Herman, Inc., 23 Mich. App. 716, 719, 179 N.W.2d 252 (Mich.App. 1970).* Waiver cannot occur before the right exists. In this case, Defendants contend Lynch made a misrepresentation prior to Defendant Spencer's signing of the CBA, as a means to induce him to sign the CBA. Thus, assuming without deciding, that Lynch's statement waived any claims for unpaid contributions, it was not a waiver of a known right because the right did not exist until the agreement was signed.

### B. Personal Liability of Defendant F. Michael Spencer

The parties dispute whether Defendant Spencer is personally liable for any unpaid fringe benefit contributions pursuant to ERISA. Plaintiffs contend that Defendant Spencer is a fiduciary under *29 U.S.C. § 1002 (21)(A)*:

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control [*11] respecting management of such plan or exercises any authority or control respecting management or disposition of its assets * * *

According to Plaintiffs, the unpaid fringe benefit contributions became "plan assets" when they became due. Plaintiffs allege that Defendant Spencer had the authority and control over the disposition of those "plan assets," i.e., the fringe benefit contributions, and chose not to pay them. Thus, Plaintiff concludes that Defendant Spencer is personally liable pursuant to *29 U.S.C. § 1109 (a)* because he breached his fiduciary duty to the plan.

Under the facts of this case, it is clear that if the unpaid fringe benefit contributions were a plan asset when they became due, then Defendant Spencer was a fiduciary and he breached his fiduciary duty by failing to pay the fringe benefit contributions. As Plaintiffs point out, Defendant Spencer testified he is the only officer of CSS. [Motion, Exhibit 2, p.7]. Defendant Spencer's supplemental Affidavit also indicates that he handled "general or administrative work; overall running of the business; office work; bidding of jobs; and organization." [Supp. Response, Exhibit 16]. There is no evidence that anyone other than [*12] Defendant Spencer had the authority or control to dispose of plan assets. Further, there is no indication that anyone other than Defendant Spencer made the decision not to pay the fringe benefit contributions at issue and instead to direct the finances of CSS elsewhere.

Thus, the issue in this case for purposes of personal liability is whether the unpaid fringe benefit contributions were plan assets when they became due. The unpaid benefit contributions were plan assets when they became due to the extent they fell within *29 C.F.R. § 2510.3-102*:

> (a) General rule. For purposes of [relevant portions of ERISA], the assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets.

Accordingly, Defendant Spencer is personally liable for any unpaid contributions included in Plaintiffs' audit that were either paid to CSS by an employee, or withheld from an employee's wages for contribution to an ERISA plan.

The remaining issue is [*13] whether benefit contributions to be made by an employer are plan assets when they become due. ERISA does not define plan assets. Additionally, the Sixth Circuit has not addressed whether employer benefit contributions are plan assets when they become due. Several cases in this Circuit and others have addressed the issue and there appears to be a split. Some cases hold that benefit contributions are plan assets when they become due only if the trust agreements so provide. *Plumbers Local 98 Defined Benefit Funds v. Controlled Water, Inc., 2006 U.S. Dist. LEXIS 69913, 2006 WL 2708544 (E.D.Mich. 2006)*; *ITPE Pension Fund v. Hall, 334 F.3d 1011 (11th Cir. 2003)*; and *Galgay v. Gangloff, 677 F. Supp. 295 (M.D.Pa. 1987)*. Others seem to hold that regardless of the written agreement between the parties, fringe benefit contributions are plan assets when they become due. *Trustees of the Michigan Regional Council of Carpenters Employee Benefits Fund v. Accura Concrete Walls, Inc., 408 F. Supp. 2d 370 (E.D.Mich. 2005)*; *Operating Engineers' Local 324 Fringe Benefit Funds v. Nicolas Equipment, LLC, 353 F.Supp.2d 851 (E.D.Mich. 2004)*; and *Southern Electrical Health Fund v. Kelley, 308 F. Supp. 2d 847 (M.D.Tenn. 2003)*.

This Court [*14] agrees with the reasoning of *ITPE*, that unpaid employer contributions become plan assets when due only when an agreement between the parties explicitly so provides. In *ITPE*, the court recognized that employee contributions that fall within the scope of *29 C.F.R. § 2510.3-102* are plan assets for purposes of ERISA when they become due. *ITPE, 334 F.3d at 1014, n.10*. However, the court held that with respect to employer contributions, "unpaid employer contributions are not assets of a fund unless the agreement between the fund and the employer specifically and clearly declares otherwise." *Id. at 1014*. The court stated "[t]he effect of language that makes unpaid contributions assets of the fund is that 'when a corporation is delinquent in its contributions, the fund has a sufficient priority on the corporation's available resources that individuals controlling corporate resources are controlling fund assets..'" *Id.* (citation omitted). Further, "[t]his effect places 'heavy responsibilities on employers, but only to the extent that an employer freely accepts those responsibilities in collective bargaining.'" *Id.* In *ITPE*, the parties argued for two differing interpretations of the contract [*15] regarding whether unpaid contributions were plan assets. The court found both the funds and the defendant employer's contrary interpretation of the contract credible. The court held "it would be unfair for us to now apply principles of contract construction to decide that such contributions are indeed assets and that personal liability is appropriate for those with control over those newly clarified assets...[a] person should not be attributed fiduciary status under ERISA and held accountable for performance of the strict responsibilities required of him in that role, if he is not clearly aware of his status as a fiduciary." *Id. at 1015*.

The district court cases in this circuit that found contrary to *ITPE* did not provide an in depth analysis. Plaintiffs cite the case *Nicolas Equipment, supra*. In *Nicolas Equipment*, the district court found, without analysis, that "a company's contributions to benefit funds, such as in this case, constitute plan assets under *29 U.S.C. § 1002 (21)(A)* as they become due." *Nicolas Equipment, 353 F. Supp. 2d at 854*. For this proposition, the *Nicolas Equipment* court quoted from *Kelley, supra*, and also cited, among others, *29 C.F.R. § 2510.3-102*, and *Galgay, supra.* [*16] In *Kelley*, the district court did not provide any analysis for its conclusion, and cited, among others, *29 C.F.R. § 2510.3-102* and *Galgay, supra*. As discussed above, *§ 2510.3-102* pertains to employee contributions. Neither the court in *Nicolas Equipment* nor *Kelley* identify whether the contributions at issue in those cases were employee or employer contributions. Additionally, in *Galgay*, the court specifically held that the contributions at issue were a plan asset based on the agreement between the parties. "The key to the court's ruling in this situation is the clear and undisputed language of the [agreement], to which all defendants are allegedly parties either directly or indirectly, stating that title to all monies 'due and owing' the plaintiff fund is 'vested' in the fund...[t]hus, the unambiguous language of the [agreement] makes any delinquent employer contributions vested assets of the plaintiff fund..." *Galgay, 677 F. Supp. at 301*.

In this case, Plaintiffs direct the Court to an "Agreement and Declaration of Trust" to establish that the agreement provides that employee benefit contributions become plan assets when they become due. [Supp. Reply, Exhibit 6]. The agreement offered [*17] by Plaintiffs was entered between

Bricklayers,' Mason,' and Plasterers' International Union, Local No. 7 and "representatives of the corporations, partnerships and sole proprietorships which employ persons represented by the Union and contribute with respect to those employees to the Fund maintained hereunder." The agreement created the Trust Fund known as "Saginaw Valley Bricklayers' Health and Welfare Fund." Plaintiffs do not indicate how this document is binding on the parties now before the Court, for that reason alone, Plaintiffs are not entitled to summary judgment as to the personal liability of Defendant Spencer.

In addition, Plaintiffs rely on the following provision to establish that employer contributions are plan assets:

> Neither the Union, Employers, Employees, nor any other person, association, or corporation shall have any right, title or interest in or to the Trust Fund except as specifically provided herein and the applicable rules and regulations hereunder. It is the intention of the parties hereto that this Section shall not disqualify contributions due from any Employer from being a priority claim in the event of bankruptcy of any such Employer.

[Supp. Reply, Exhibit [*18] 6]. According to Plaintiffs, in *Controlled Water, supra*, the court "held similar language was sufficient to render delinquent contributions plan assets." [Supp. Reply, p.4]. In *Controlled Water*, the court did not cite directly from the trust agreement, stating instead that "Plaintiffs' trust documents, incorporated into the collective bargaining agreement, provide that contributions become vested plan assets when due." *Controlled Water, 2006 U.S. Dist. LEXIS 69913, WL 2708544 at *5*. The *Controlled Water* court likened the language in the trust agreement before it to the language in the collective bargaining agreement at issue in *United States v. Panepinto, 818 F. Supp. 48 (E.D.N.Y. 1993)*. The agreement in *Panepinto* stated "[n]either the Associations as such nor any Employer shall have any legal or equitable right, title or interest in or to any sum paid by or due from the Employer and of said benefit funds." *Controlled Water*, WL 2708544 at *5. The *Panepinto* court found the language sufficient to make the amounts due assets of the funds, finding that "[i]f the employer has no legal interest in any amounts received that are 'due to' the funds, then plainly the agreement makes these amounts 'assets' of the funds." [*19] *Panepinto, 818 F.Supp. at 52*.

The language in the Trust Agreement in this case is not similar to the language in *Panepinto* or *Controlled Water*. The language in the Trust Agreement provides that the referenced entities have no right, title or interest in the Trust Fund - it says nothing of what is deemed to be an asset of the Fund. In *Panepinto*, the language specifically pertained to sums "due from" the employer. There is no language in the Trust Agreement presented by Plaintiffs that indicates contributions due from an employer are plan assets. Moreover, even to the extent that the language could be interpreted as such, it is not clear and explicit. See *ITPE, supra*, and *Galgay, supra*. Thus, the Trust Agreement does not serve to make unpaid contributions plan assets.

Plaintiffs are not entitled to summary judgment on their claim that Defendant Spencer is personally liable for employer contributions. As held above, Plaintiffs are entitled to summary judgment for unpaid employee contributions included in the audit that fall within the scope of *29 C.F.R. § 2510.3-102*.

### C. Accuracy of the Audit

The parties dispute the accuracy of the audit submitted by Plaintiffs. Defendants contend that the [*20] additional documents submitted with their Supplemental Response allow for an accurate calculation, excluding the jobs that were not meant to be included in the calculation, and excluding non-covered work performed by Defendant Spencer and Jon Fritz. Plaintiffs argue that the additional documents "provide no useful information." [Supp. Reply, p.1].

The Court is not able to rule on the accuracy of the audit submitted by Plaintiffs because Plaintiffs concede the audit includes amounts owed to non-party International Union. [Reply, p.1, n.1; and Motion, Exhibit 3]. Despite supplemental briefing and exhibits, Plaintiffs have made no attempts to correct the audit or to add International Union as a party. Further, the audit includes an amount owed for unspecified "dues." In their Complaint, the only refer-

ence Plaintiffs make to dues are to say that CSS became indebted for payment of "International dues." [Complaint, P20]. It is unclear whether this refers to dues owed to the International Union, who is not a party to this action. Although the calculation listed in the Complaint does not indicate that dues are owed, [Complaint, P 20]; the audit lists "dues" as owing. [Motion, Exhibit 3].

Accordingly, [*21] Plaintiffs are not entitled to summary judgment on the issue of damages because the audit is admittedly inaccurate.

### D. Breach of the Collective Bargaining Agreement and Defendants' Counterclaim for Fraud

Defendants do not offer any evidence that they did not breach the CBA when they failed to make required contributions. Rather, Defendants argue that Local 9 fraudulently induced Defendant Spencer to sign the interim CBA, effective August 1, 2006. According to Defendants, Michael Lynch, a Field Representative for Local 9, told Defendant Spencer that he would not be required to pay contributions for himself. As a preliminary matter, because the allegedly fraudulent agreement was not effective until August 1, 2006, and the audit is for the dates June 2005 through November 2006, it is only August 2006 through November 2006 for which Defendants can contest the inclusion of Defendant Spencer in the calculation of contributions owing on the basis of fraud. The parties do not indicate whether the CBA in effect prior to August 1, 2006 required fringe benefit contributions on behalf of Defendant Spencer.

Under Michigan law, to establish a claim for fraud in the inducement, the plaintiff must show: [*22] (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. *Uhl v. Komatsu Forklift Company, 512 F.3d 294, 304 (6th Cir. 2008)*(citing *Custom Data Solutions, Inc. v. Preferred Capital, Inc., 274 Mich.App. 239, 733 N.W.2d 102 (Mich.App. 2006))*. "When a party is defrauded by means of a contract, he may rescind and ask to be placed in statu quo, or he may affirm and sue for damages resulting from the fraud." *Jack Mann Chevrolet Co. v. Associates Inv. Co., 125 F.2d 778, 783 (6th Cir. 1942)*.

### 1. Trust Fund Plaintiffs

The parties acknowledge that Defendants' counterclaim of fraud in the inducement does not apply to reduce the amount of contributions owed to the Trust Fund Plaintiffs, and that they must be paid in accordance with the written agreements. See *Central States Southeast and Southwest Areas Pension Fund, et al. v. Behnke, Inc., 883 F.2d 454 (6th Cir. 1989)*.

### 2. [*23] MCE

Defendants' counterclaim for fraud in the inducement based on alleged misrepresentations made by a Local 9 Field Representative does not absolve Defendants of any liability for breach of their agreement with Plaintiff MCE. There are no allegations that MCE made any misrepresentations and Defendants do not offer any other defenses against MCE's claim for breach of the CBA. Thus, MCE is entitled to summary judgment on its claim of breach of the CBA.

### 3. Local 9

For purposes of this Motion, the Court must accept as true Defendant Spencer's testimony that Lynch told him he would not have to pay fringe benefit contributions for himself. Additionally, Plaintiffs do not challenge whether Lynch knew the representation was false when he allegedly made it. Presumably, Lynch made the alleged misrepresentation with the intention that Defendant Spencer would act on it. Further, Defendant Spencer in fact does have to pay employer contributions for himself under the terms of the CBA and trust agreements and therefore has suffered damages.

Thus, the factor at issue is whether Defendant Spencer reasonably relied on Lynch's misrepresentation that he would not have to pay employer contributions for himself. [*24] Plaintiffs direct the Court to *Nieves v. Bell Industries, Inc., 204 Mich. App. 459, 517 N.W.2d 235 (Mich.App. 1994)*; and *Operating Engineers Pension Trust v. Moine Brothers Excavators, Inc., 124 L.R.R.M. 2030, 1986*

*WL 15442 (C.D.Cal. 1986)*. In *Nieves*, the plaintiff was an employee of the defendant. During negotiation and at the onset of his employment, the plaintiff was verbally assured his employment was terminable only for just cause. However, the employment application and employee handbook advised that all employment was terminable at-will. The plaintiff asked his supervisor to strike the at-will language from his compensation agreement but the supervisor stated he did not have the authority to do that. However, the supervisor assured the plaintiff that the at-will language did not apply to him. The plaintiff was allegedly terminated without just cause and brought an action including a claim for fraudulent misrepresentation. In reversing the trial court's denial of summary judgment to the employer, the court held "[a] misrepresentation claim requires reasonable reliance on a false representation." *Nieves, 204 Mich. App. at 464.* "There can be no fraud where a person has the means to determine that a representation [*25] is not true." *Id.* The court rejected the fraud claim because the plaintiff chose to believe his supervisor even in light of the explicit terms of the employment agreement and the supervisor's admission that he could not strike the provision. The court stated "a plaintiff cannot claim to have been defrauded where he had information available to him that he chose to ignore." *Id. at 465.*

In *Moine*, similar to the instant case, a group of trust funds brought an action against an employer for unpaid benefit contributions. The defendant employer brought a third party complaint against the union alleging fraud in the inducement based on a union representative's misrepresentation that the defendant would not have to pay contributions for principals. The court held "Local 12 persuasively argues that the disputed fact concerning the alleged misrepresentations is not material, because as a matter of law, an employer may not rely on the statements of a bargaining adversary concerning the scope of its contractual obligations." *Moine, 124 L.R.R.M. 2030, 1986 WL 15442, *4.* The court noted that since the union and the trusts are separate entities "the employer could not reasonably rely on the statements of Local 12's [*26] agent concerning the employer's obligation to make fringe benefit contributions to the trust." *Id.*

Defendants direct the Court to *Laborer's Pension Fund v. Litgen Concrete Cutting & Coring Company, 128 F.R.D. 96 (N.D.Ill. 1989)*; and *Rozay's Transfer v. Local Freight Drivers, Local 208, 850 F.2d 1321 (9th Cir. 1988).* In *Litgen*, the court ruled on a motion by an employer to file a counterclaim against the union for indemnification of contribution amounts owed to employee trust funds. The employer alleged fraud by the union. The court granted the employer leave to file a counterclaim. However, the court did not describe the fraud alleged, and did not address reliance, or any other element of fraud. The *Litgen* case is not helpful.

In *Rozay's Transfer*, a union representative misrepresented to the defendant employer that the plaintiff trust funds would forgive delinquent contribution payments in order to induce the employer to sign a new CBA and agree to settle an agency action. The union representative learned that the trust funds had voted not to forgive the delinquent contributions prior to the employer's signing of the new agreement, but did not inform the employer. Following a bench trial, [*27] the union was found guilty of fraudulent misrepresentation. The plaintiffs appealed. The court noted that the general rule that "an employer cannot reasonably rely on a union's erroneous representation regarding the scope of the legal obligations to a distinct entity of which the employer is presumably aware" was inapplicable. *Rozay's Transfer, 850 F.2d at 1329.* The court made a distinction between cases where the employer alleged misrepresentations of legal obligations, such as the obligation to pay contributions - and representations of material fact. The court upheld the district court's verdict. The *Rozay's Transfer* court found that the employer did not "miscomprehend its legal obligations to the fund, rather, it misunderstood the state of facts, known to the union, existing at the time it entered into a separate agreement with the union." *Id.* The court also noted that an employer is presumed to understand the legal consequences of its agreements. *Id. at 1330.*

In this case, Defendant Spencer's reliance on Lynch's statement that he would not be required to pay contributions for himself was not reasonable in light of the clear terms of the written agreements. Unlike *Rozay's Transfer*, [*28] this is not a case where the union misrepresented an existing fact. Here, the union allegedly misrepresented Defendants' legal obligations under the agreements. While it is unfortunate that Lynch made such an error, De-

fendant Spencer had the agreements available to him and could have seen that they required payment for any covered work he performed. See *Nieves, supra.*

Accordingly, Plaintiff Local 9 is entitled to summary judgment on Defendants' counterclaim for fraudulent inducement. As Defendants assert no other defense, Plaintiff Local 9 is also entitled to summary judgment on its claim for breach of the CBA and trust agreements.

### E. Ancillary Amounts Owed

Defendants also dispute the imposition of interest at the rate of 12%; the audit assessment; and attorney fees and costs.

### 1. Interest

Defendants argue in their Response that there is no basis for Plaintiffs request for prejudgment interest to be paid at the rate of 12%. In their Reply, Plaintiffs amend the request to 8%, consistent with the recently revised Collection Policies and Procedures. In their Sur-Reply, Defendants argue that the rate was not in effect during the time period at issue. Defendants contend neither of the interest [*29] rates offered by Plaintiffs are applicable, but do not identify what they believe is the applicable interest rate. Under *29 U.S.C. § 1132(g)(2)(B)*, this Court shall order interest on unpaid contributions. Also, pursuant to *29 U.S.C. § 1132(g)(2)(C)*, the Court shall order an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent...of the amount determined by the court under subparagraph (A). *Section 1132(g)* also provides that "[f]or purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under [*26 U.S.C. § 6621*].

Therefore, as Defendants have not demonstrated a basis for applying a different rate, interest shall be paid at the rate of 8%, consistent with the recently revised Collection Policies and Procedures.

### 2. Costs and Attorney Fees

Plaintiffs request attorney fees in the amount of $ 7,308.80. Attorney fees are mandatory for actions brought by the trustees. See *29 U.S.C. § 1132(g)(2)*. Further, the CBA also provides for payment of attorney fees.

Accordingly, Plaintiffs are entitled [*30] to payment of attorney fees.

### 3. Audit Assessment (Liquidated Damages)

Defendants dispute the amount sought as an audit assessment, or liquidated damages. Plaintiffs seek $ 4,520.28 for the audit assessment. Defendants argue this amount is excessive and amounts to a penalty. An award for liquidated damages is provided for in *29 U.S.C. § 1132(g)(2)*. As noted above, *§ 1132(g)(2)* provides, the Court shall order an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent...of the amount determined by the court under subparagraph (A). The Michigan Bricklayers Joint Delinquency Committee Collection Policy provides for liquidated damages "in an amount equal to eight percent (8%) of the unpaid contributions." [Reply, Exhibit 6, p.4]. It also requires employers to pay interest on the unpaid contributions at a rate of 8% and to pay for the cost of the audit. *Id.* Plaintiffs also supplied a Supplemental Affidavit from the auditor, Jeni Magwood, detailing her auditing process.

Plaintiffs are entitled to collection of liquidated damages, however, as noted above, the audit as submitted by Plaintiffs [*31] is inaccurate and must be corrected.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment as to liability on Plaintiff MCE and Local 9's claim for breach of the CBA and Trust Agreements; and the Trust Fund Plaintiffs' claim of personal liability for unpaid employee contributions falling within the scope of *29 C.F.R. § 2510.3-102*. The Court also **GRANTS** Plaintiffs' Motion for Summary Judgment on Defendants' Counterclaim against Local 9 for fraudulent inducement. The Court **DENIES** Plaintiffs' Motion for Summary Judgment on Plaintiff's claim of personal liability for unpaid employer contributions. The only remaining issue in this case

...

is damages, in light of Plaintiffs' failure to submit an accurate audit.

**IT IS SO ORDERED.**

S/ Sean F. Cox

Sean F. Cox

United States District Judge

Dated: April 22, 2008