UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Operating Engineers Local 324 Heath
Care Plan, et al,

    Plaintiff,

vs                                                  Case No: 11-10494
                                                   Honorable Victoria A. Roberts

G&W Construction Company, et al,

    Defendant.
_____/

**ORDER**

**I.    Introduction**

This matter is before the Court on Plaintiffs' Motion to Strike Defendants' Affirmative Defenses. (Doc. #22)  The matter has been fully briefed.  Plaintiffs' Motion is **DENIED**.

**II.    Background**

Plaintiffs' Operating Engineers Local 324 Health Care Plan ("Plaintiffs") brings this action against Defendants G&W Construction Company, a domestic corporation, and Gary Nollar ("Defendants").  Plaintiffs allege that G&W Construction failed to pay fringe benefits as required by union contract, in violation of ERISA as well as the Michigan Building Contract Fund Act ("MBCFA"), M.C.L. §570.151.  Plaintiffs also contend that Gary Nollar breached his fiduciary duties by failing to pay fringe benefits contributions because he had discretionary control over the operations of G&W Construction.  Defendants plead fraud, waiver, estoppel and laches as affirmative

1

defenses.

Plaintiffs are a group of nine union trust funds.  Defendant G&W Construction is a domestic corporation in the building and construction industry.  Defendant Gary Nollar is the owner and President of G&W Construction.  The Defendants concede that they have not paid the fringe benefits but argue they have no legal obligation to do so because: (1) no collective bargaining agreement ("CBA") or contractual agreement exists between the parties; (2) no provision for fringe benefits was ever made; and (3) none of the Defendants' employees is a union member.

Defendants assert that G&W Construction has always been, and remains, a non-union contractor.  In 1984, G&W hired an employee named Richard Ruby.  Mr. Ruby wanted to have union membership and offered to pay his own dues.  Mr. Nollar contacted the union to see if he could make arrangements for Mr. Ruby to be a union member and receive union benefits.  Mr. Nollar was told this could be done, and he signed up Mr. Ruby.  When Mr. Ruby retired in 2007, G&W Construction stopped paying fringe benefits.

In October 2010, G&W Construction was contacted by Cadillac Asphalt to do a job subject to a Construction Unity Board Agreement.  Cadillac told G&W Construction that it would have to sign up with the union in order to complete this specific job.  Aside from these two instances, G&W Construction asserts that it had no other contact with the Union.

The Plaintiffs originally provided a copy of an unsigned CBA, effective June 1, 2008, that does not specifically mention these Defendants.  In its reply brief, the Plaintiffs enclosed a second CBA, dated June 25, 1984 which is signed by G&W

Construction. This agreement contains provisions for the payment of fringe benefits, lists the Plaintiff Union as the sole bargaining agent for all of Defendants' employees, and has a renewal clause in the absence of timely notice of termination.

Defendants say Plaintiffs wrongful acts include: (1) leading Defendants to believe that fringe benefits were due only for Union members; (2) conducting audits in which fringe benefit payments were sought only for Union members; and (3) affirming Defendants' understanding that fringe benefits were not payable for non-members. Finally, Defendants assert they relied on these acts and omissions in the course of bidding and accepting work.

As affirmative defenses, Plaintiffs assert that waiver, estoppel, laches, and fraud in the inducement are prohibited in an action to recover fringe benefit contributions under ERISA. Plaintiffs request an order striking them. Plaintiffs request that discovery with respect to these defenses be prohibited. Plaintiffs also move to strike Defendants' statute of limitations defense. Finally, Plaintiffs request the Court to award the costs they have incurred. Defendants request that the Motion to Strike be denied, and that they be awarded attorney fees as well.

### III.     Analysis

#### A.     Standard of Review

Federal Rule of Civil Procedure 12(f) provides that "the court may order stricken from any pleading any insufficient defense." Fed.R.Civ.P. 12(f). Striking a pleading is generally disfavored, in part because of the "practical difficulty of deciding cases without a factual record." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir.1953). An affirmative defense is insufficient if, as a matter of law, it cannot

succeed under any circumstances. *Ameriwood Industries International Corp. v. Arthur*, 961 F.Supp. 1078, 1083 (W.D.Mich.1997). A motion to strike is within the discretion of the district court. *Id*. One purpose of the motion to strike is to avoid litigating "spurious issues" by dispensing with them prior to trial. *Kelley v. Thomas Solvent Co.,* 714 F.Supp. 1439, 1442 (W.D.Mich.1989), quoting *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir.1986).

### B.     Equitable defenses are available in ERISA collection cases in some instances

Plaintiffs contend that waiver, estoppel, laches, and fraud in the inducement are prohibited defenses in an action to recover fringe benefit contributions under ERISA. Plaintiffs allege that there are only three defenses available to employers, and since waiver, estoppel, laches, and fraud in the inducement are not among these, they are not allowed. Plaintiffs further argue that equitable defenses are generally prohibited in cases based in law. Finally, the Plaintiffs say that even if equitable defenses are permitted, they must be based on reasonable reliance.

In support of their argument that waiver, estoppel, laches, and fraud in the inducement are prohibited defenses, Plaintiffs rely on *Iron Workers' Local No. 25 Pension Fund v. Allied Fence and Security Systems, Inc*, 922 F.Supp. 1250 (E.D.Mich.1996), for the proposition that there are only three defenses available to employers in this situation: (1) the pension contributions themselves are illegal; (2) the collective bargaining agreement is void ab initio, (fraud in the execution, and not merely voidable, as in fraud in the case of fraudulent inducement); and (3) the employees have voted to decertify the union as their bargaining representative, thus prospectively

voiding the union's collective bargaining agreement.

In further support of their argument that waiver, estoppel, laches, and fraud in the inducement are not among permissible defenses, Plaintiffs rely on *Southwest Administrators Inc. v. Rozay's Transfer*, 791 F.2d 769, 773 (9th Cir.1986). In *Rozay's Transfer*, the employer signed a CBA under the belief that he would only have to pay prospective benefits. The union official learned that the employer would also have to pay retrospective benefits, but the union official did not advise the employer accordingly. The court held that this is a case of 'fraud in the inducement' not a valid defense in an ERISA collection case.

Plaintiffs further argue that equitable defenses are generally prohibited in cases based in law. In support, Plaintiffs rely on *Gorman Bros.*, for the argument that even if equitable defenses are permitted, they must be based on reasonable reliance. *Gorman*, a Seventh Circuit case, held that the defense of laches "fails not because ERISA bars such a defense, but because its elements have not been proved here." *Teamsters & Employers Welfare Trust of Illinois v. Gorman Bros. Ready Mix*, 283 F.3d 877, 883 (7th Cir.2002). In *Gorman*, the Seventh Circuit examined whether the union officials carelessness caused the employer to reasonably believe that delinquent contributions would be forgiven. *Gorman Bros.*, 283 F.3d at 883. The court found that the employer's reliance on a union official's comments was unreasonable and thus, laches did not excuse the employer from making contributions.

While Plaintiffs are correct that *Allied Fence* expressly prohibits a fraud in the inducement defense, it does not expressly prohibit other affirmative defenses. Plaintiffs rely on *Rozay's Transfer* as additional support for their contention that Congress

5

amended ERISA to limit the range of defenses available to defendants in collection cases. However, *Rozay's Transfer* focuses mainly on the distinction between 'fraud in the inducement' and 'fraud in the execution' and does not conclusively establish that the defendant's affirmative defenses are unavailable.

Defendants are correct that the text of *Gorman* does not prohibit equitable defenses in cases based in law. *Gorman* says that laches can be used to shorten the statute of limitations, "whether the suit is at law or in equity, because, as with many equitable defenses, the defense of laches is equally available in suits at law." *Id.* at 881. The Plaintiffs are in error when they claim that all equitable defenses must be based on reasonable reliance. The Plaintiffs appear to be making a blanket statement that applies part of the analysis of a laches defense to all equitable defenses.

As a general principle then, some equitable defenses may be available in a case such as this. The Court now addresses each defense asserted by Defendants.

### a. Fraud in the execution of the contract is available as a defense

Fraud in the execution is one of the defenses which allows an employer to defeat an apparent obligation to make ERISA contributions. *Iron Workers' Local No. 25 Pension Fund v. Allied Fence and Security Systems, Inc.*, 922 F.Supp. 1250, 1256 (E.D.Mich.1996). In order for an employer to maintain a fraud in the execution defense, the defendant must "...establish he executed the collective bargaining agreement with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms" as well as "excusable ignorance of the contents of the writing signed." *Bricklayers' Pension Trust Fund v. Chirco*, 675 F.Supp. 1083, 1087 (E.D.Mich.1987).

'Excusable ignorance' involves a lack of opportunity to gain knowledge of the document's contents.  For example, an employer's ignorance was deemed excusable when the union substituted a materially different contract.  *Allied Fence*, 922 F.Supp. at 1258 citing *Rozay's Transfer*, 791 F.2d at 774.  Another example of excusable ignorance is when a union fails to provide an employer with a copy of the document.  *Chirco,* 675 F.Supp. at 1086-87.  The difference between fraud in the inducement and fraud in the execution is that the former "induces a party to assent to something he otherwise would not have; the latter induces a party to believe the nature of his act is something entirely different than it actually is."  *Rozay's Transfer*, 791 F.2d at 774.

      Plaintiffs say that the Defendants attempt to put forward a 'fraud in the inducement' defense.  Such a defense would ultimately be unsuccessful, as the claim that a promise to make contributions was fraudulently induced is not a legitimate defense in a case to recover delinquent contributions.  The Defendants respond by saying that they simply allege facts to put the plaintiff on notice, and have not labeled the fraud defense as either 'fraud in the inducement' or 'fraud in the execution.'  Defendants ask the Court to wait for factual development before deciding whether the facts support a fraud defense as a matter of law.

      Plaintiffs are correct that 'fraud in the inducement' will not allow an employer to avoid ERISA obligations.  However, *Allied Fence* specifically notes that 'fraud in the execution' is a valid defense.  Therefore, as a matter of law, it is not true that the Defendants' general affirmative defense of "fraud" could not succeed under any circumstances.

      Plaintiffs also note similarities between the facts in this case and those in *Cent.*

*States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv. Inc.*, 870 F.2d 1148, 1153 (7th Cir.1989). *Gerber*, a Seventh Circuit case, was heard on appeal following a bench trial. In *Gerber*, as here, the employer attempted to pay contributions for some employees but not others. The employer signed a CBA but arranged an oral agreement with the union that the CBA would not be enforced. The *Gerber* court held that benefit plan trustees may enforce a plan according to the terms of the documents despite oral exceptions to the underlying agreement. Plaintiffs rely on *Gerber* for the proposition that Congress enacted section 515 of ERISA to enforce pension agreements. Plaintiffs also make a public policy argument: that pension and welfare funds depend on the broad inclusion of many employees in order to function, and that the limited inclusion of only those close to retirement is unworkable. This public policy argument may be applicable later in the litigation; it does not address whether affirmative defenses are available in an ERISA collection case.

### b. Equitable defenses of estoppel, laches and waiver

Plaintiffs do not cite conclusive authority that the equitable defenses of estoppel, laches and waiver are not available in an ERISA collection case. The Sixth Circuit found it unnecessary to decide whether or not equitable estoppel should be available as a defense to contribution recovery actions because the defendant was not able to establish the elements of an estoppel defense. *Trustees of the Mich. Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 591 (6th Cir.2000). Similarly, a district court in the Sixth Circuit held that it isn't clear if the affirmative defense of laches is available in the Sixth Circuit, but even if it is, defendants did not establish the elements of the defense. *Iron Workers' Local No. 25 v. Future Fence Co.*, 2006 WL 2077639 (E.D.Mich.). See also, *Iron*

*Workers' Local No. 25 v. Klassic Services, Inc.*, 913 F.Supp. 541, 546 (E.D.Mich.1996) (allowing employer to amend answer to assert waiver, laches, unclean hands, and equitable estoppel defenses in a ERISA contributions case).

    **C.**    **The statute of limitations is six years**

Plaintiffs contend that the applicable statute of limitations is six years, and all of their claims fall within this period. The Plaintiffs argue that the Defendants' eighth affirmative defense regarding the limitations period is an insufficient defense and should be struck. In support, Plaintiffs rely on *Mich. United Food & Commercial Workers Unions v. Muir Co.*, 992 F.2d 594 (6th Cir.1993) (holding that in an ERISA collection action, the six year statute of limitations begins to run when the plaintiff discovers, or should have discovered, the injury that is the basis of the action).

The Plaintiffs also argue that there is a strong presumption against applying an equitable limitations defense against pension funds in fringe benefit collections. Plaintiffs rely on *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 233 (6th Cir.2007). *Chirco* is a copyright infringement case where a real estate developer sought monetary damages as well as the destruction of apartment buildings. *Id.* at 228. The plaintiff in *Chirco* was aware when the alleged illegal development broke ground but did not immediately press charges. *Id.* at 230. The Plaintiff brought the claim within the statute of limitations period, but waited until much of the building was completed and sold before bringing suit. *Id.* The Sixth Circuit held that the doctrine of laches does not apply to the plaintiff's request for monetary damages and injunctive relief, but that laches did bar the destruction of buildings already occupied, sold, or substantially constructed. *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d at 235-36.

Defendants do not contest the six year statute of limitations. (R. 24 at 5). Defendants do note that the Plaintiffs do not indicate the time period for which they seek contributions. (*Id.*). Defendants suggest that discovery or a written stipulation from the Plaintiffs will reveal whether any of the amounts at issue fall outside the limitations period. (*Id.* at 6.).

### D. Plaintiff's motion is timely

Defendants' argue that the Motion to Strike should be denied as it is untimely. The Plaintiffs were required to file the motion within twenty-one days after service, Fed.R.Civ.P.12(f), plus an additional three days for service of process. Defendants' Amended Answer was filed on September 6, 2011. Therefore, excluding September 6th as the day that triggers the event, the Plaintiffs' motion was due on September 27, 2011, plus three additional days for service of process. Fed.R.Civ.P.6. The Plaintiffs filed their motion on September 28, 2011. Plaintiffs' motion is timely.

## V. Conclusion

Plaintiffs provided the Court with two different CBA's. Plaintiffs must file an amended Complaint and attach the correct CBA so that the Defendants have an opportunity to respond.

For the above reasons, Plaintiffs' Motion to Strike is **DENIED**. Both requests for attorney fees are **DENIED**.

**IT IS ORDERED.**

/s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: December 22, 2011

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on December 22, 2011.<br><br>s/Linda Vertriest<br>Deputy Clerk |